## MATHEWSON, Appellant, v. KILBURN et al.

**Division One, June 20, 1904.**

1. **EJECTMENT: No Instructions: Matters Reviewable.** Where an ejectment suit is tried by the court sitting as a jury, and no instructions are asked or given, only assignments of errors apparent on the face of the record, and the question of whether there was substantial evidence to support the judgment, and rulings of the court made in the course of the trial, are reviewable on appeal.

2. **————: Review of Facts: Homestead.** An issue as to whether the land in suit was plaintiff's homestead is one of fact, and being such is not reviewable by the Supreme Court, and the finding of the trial court thereon will not be disturbed if there was substantial evidence to support it.

3. **EXECUTION: Issued Against Non-Resident.** Where the defendant in a judgment rendered against him by a magistrate's court, after the rendition of the judgment ceased to be a resident of the county, the issue of an execution to the constable of the township in which the judgment was rendered, instead of to the constable of the township in which the defendant formerly resided and in which the land lies, does not impair the right of the clerk of the circuit court to issue an execution against him, based upon a transcript of the justice's judgment and a *nulla bona* return, and hence does not invalidate a sale under execution of the land by the sheriff.

Appeal from Livingston Circuit Court.—*Hon. J. W. Alexander*, Judge.

AFFIRMED.

*P. C. Young, Scott J. Miller* and *Frank S. Miller* for appellant.

(1)  Plaintiff was the head of a family under the evidence.  Ridenour-Baker Gro. Co., 142 Mo. 165; Broyles v. Cox, 153 Mo. 242.  (2) The land in controversy was his homestead and therefore exempt from sale by levy of execution for debts made after the homestead was acquired.  R. S. 1899, sec. 3616.  (3) The homestead had not been abandoned by plaintiff.  Mills v. Mills, 141 Mo. 198.  The question of abandonment of the homestead is a question of fact.  The intent of the homesteader cuts a large figure in solving the question. Mills v. Mills, 141 Mo. 198; Kaes v. Gross, 92 Mo. 647; Leake v. King, 85 Mo. 413; Smith v. Bunn, 75 Mo. 559; Bealey v. Blake, 153 Mo. 657; Bank v. Brown, 165 Mo. 32; Waples on Homestead, p. 562, sec. 2.  (4) Not necessary to claim exemption.  Tapley v. Ogle, 162 Mo. 197.  (5)  The evidence does not show a valid sale of the land.  The executions are void.  R. S. 1899, sec. 4019.

*Sheetz & Sons* for respondents.

(1)  No exceptions were saved to the admission of the justice's transcript, the execution and other proceedings.  (2)  The appellant was not a resident of the county, and no execution or return of *nulla bona* was necessary from the justice.  Huhn v. Lang, 122 Mo. 606.  (3) No instructions were asked or given, and the lower court found all the facts in favor of defendants and this court will not interfere therewith.  Peniston v. Schlude, 171 Mo. 132; Comer v. Statham, 173 Mo. 248. (4) Appellant was not the head of a family; his father and his father's family were in nowise dependent upon him for support.  Wade v. Jones, 20 Mo. 76; State v.

Kane, 42 Mo. App. 253. The members of the family must be dependent on him for support. 15 Am. and Eng. Ency. of Law (2 Ed.), 237, 538. Housekeeper is synonymous with head of family. Same, vol. 12, p. 89. The court found appellant was not the head of a family or housekeeper and had no homestead, and that he had abandoned the premises in suit; and that finding is correct under the law and evidence in this case. (5) Housekeeper must keep house in the State; when he ceases to do so he ceases to be a housekeeper. 15 Am. and Eng. Ency. of Law (2 Ed.), 536. (6) Plaintiff had no homestead in the premises in suit; he had left the State, rented property in Kansas, and was not in the occupancy of the premises in suit as the head of a family at the time of the levy of the writ. Brewing Ass'n v. Howard, 150 Mo. 451. (7) The title of respondents to the land in suit accrued after sale by the sheriff and while appellant was acting in such a manner as to induce the belief that he had abandoned all claim to it. He will not be permitted to make any claim now. Reece v. Renfrow, 68 Tex. 192.

MARSHALL, J.—This is an action of ejectment to recover the southeast quarter of section 11, township 59, range 23, in Livingston county. The petition is in the usual form. The answer is a general denial, coupled with a special plea of estoppel. The circuit court entered judgment for the defendant and the plaintiff appealed.

The case was tried by the court without a jury, and no instructions were asked, given or refused. The only questions, therefore, which are open to review in this court, are errors apparent on the face of the record, if any; whether there is any substantial evidence to support the judgment, and the rulings of the court made in the course of the trial, which were objected to and exceptions properly saved.

## I.

The chief contention of the plaintiff is that the land in controversy was his homestead, and, therefore, was not subject to sale under execution upon a judgment against him. The defendants, on the other hand, contend that the premises were never the homestead of the defendant, and, if they were, that he abandoned the same as a homestead prior to the sale. It is plain, therefore, that this is purely a question of fact, in the state of this record, and as this court does not review the finding of fact by the trial court, the inquiry here is limited to an investigation as to whether there was any substantial evidence adduced to support the finding. The showing made by the plaintiff is this: In 1895, the plaintiff's father owned sixty acres of land in Montgomery county, Kansas, on which there was a mortgage for $650; the plaintiff purchased it from his father, and in payment therefor assumed the mortgage for $650, and in addition gave the father a mortgage on the land for $800, which mortgage does not seem to have been recorded, however. The plaintiff then traded the Kansas land for the land in question. The other party, one Parkhurst, assumed the $650 mortgage on the Kansas land, the plaintiff gave Parkhurst a mortgage on this land for $800, for the difference, and the plaintiff's father destroyed the mortgage for $800 on the Kansas land. The land in question was unimproved and had only a fence around it. The plaintiff, his father, mother and sister then moved from Kansas to Missouri, and lived for a while in Chula, a short distance from the land. The plaintiff says that he brought with him from Kansas five horses, and some farming implements, and his father brought with him two colts. In 1896, the plaintiff says, he built a house, barn, etc., upon the land, cleared some of it, constructed a levee, and moved onto the premises, with his father, mother and sister, and that he supported

the family and continued to reside on the premises as his homestead until the fall of 1898, when, his sister having died, his mother's health became poor, and upon the advice of his physician, he took her back to Kansas to try to recuperate her health, intending to return to the premises as soon as her health was restored, but that his married sister, with whom he and the family were living while in Kansas, became sick and they stayed there until she got well, and then his father was taken sick with Bright's disease, and died, and on February 22, 1900, he brought his remains back to Missouri, and buried them in his lot in May cemetery, near Chula, where his sister was buried, and then he learned for the first time that the land had been sold under a judgment against him. The plaintiff further testified that before leaving the place in 1898, he sold all the personal property, stock, farming implements and household goods, that were on the place, except a grindstone and a crowbar; that he went to Rosedale, Kansas, and there rented a part of the house that his brother-in-law occupied, and went to work in Swift's Packing-house; that after giving Parkhurst a mortgage on this land for $800 he borrowed $1,200 on the land on November 13, 1896, from one Kitt, and out of the proceeds thereof he paid the $800 to Parkhurst, and in one place in the record he said he borrowed the other four hundred dollars, represented by the Kitt mortgage, for the purpose of paying off the said judgment against him, and in another place in the record he said he borrowed that sum with which to build the house, but as the judgment was only for $100, and as the house only cost $300, he could have paid for both out of said sum of $400, but did not pay the judgment, for the probable reason that the judgment was not rendered against him for over two years thereafter and the debt upon which it was based was not incurred for over a year thereafter. The plaintiff paid the interest on the Kitt mortgage for the first year, and also paid the taxes for 1896.

He claims that he was the head of the family and that he supported them, and that while his father also worked on the place, he was old and not able to work much. His father owned one hundred and sixty other acres of land in Kansas, which were rented, but plaintiff said he used the rent derived therefrom and did not employ it towards the support of the family. When the mortgage to Kitt fell due, the plaintiff was not able to pay it, but he and defendant went to all the money lenders in town trying to borrow money, but no one would lend him any more than the amount of the Kitt mortgage. The defendant said that the plaintiff told him that if he could not raise some more money on the farm, he would be obliged to abandon it and let it go, as he could not pay what was then due on it. The plaintiff denies that he made any such statement.

On the twenty-eighth of October, 1898, Mrs. Richards began suit against the plaintiff and one Long, on said note for $100, before a justice of the peace. The summons was personally served upon the defendants, and on the return day they appeared in open court and confessed judgment for one hundred dollars, with eight per cent interest from October 1, 1898. In the fall of 1898 the plaintiff sold the personal property on the place, leased the premises and went to Kansas, as above stated. He returned to Missouri in 1899, for a few days, but says he made no inquiry about the land or about the judgment. When he brought his father's remains to be buried on February 22, 1900, he learned that the land had been sold under the Richards judgment, and he began this suit on April 1, 1901. The plaintiff's mother and married sister testified that the plaintiff supported the family, composed of himself, his mother, his father and, until her death in 1898, his sister. They and he all testified that he left the premises in the fall of 1898, on account of his mother's health, the land being bottom land, and her health not being good there, but that he did not intend to abandon the place, and always in-

tended to return to it, but was delayed in so doing by his sister's health, and his father's sickness and death.

On the other hand the defendant showed by the testimony of the grocer with whom the family dealt, that the father and mother did all the trading, and that the account was charged to the father, and that they paid all the bills except the last, which was for some ninety-seven dollars, which the plaintiff settled just about the time the family went away. The judgment referred to was not paid. The execution was returned *nulla bona*. Mrs. Richards procured a transcript to be filed in the circuit clerk's office and had an execution issued upon it, and the land was sold thereunder and she became the purchaser. Thereafter the defendant purchased the land from Mrs. Richards at an agreed price of $1,800, out of which the $1,200 Kitt mortgage with interest, was paid, as were also the back taxes and penalties, and the balance was paid to Mrs. Richards. The defendant says he purchased the land upon the faith of plaintiff's statement to him, that if he could not raise something on the land in addition to the Kitt mortgage, he would be compelled to abandon it, and upon the fact that the plaintiff was unable to raise any more money on the land, and that he sold out and moved away, and hence the defendant says the plaintiff is estopped to claim the land from him.

It is apparent from this statement of the facts that there is substantial testimony in the case to support a finding of the issues in favor of either of the parties. On the one side is the testimony of the plaintiff, and of his mother and sister, that he was the head of a family, in a legal sense, and that this was his homestead, and that he had never abandoned it, and always intended returning to it as soon as his mother's health was restored, but was prevented from so doing by sickness in his family until after the land was sold. On the other side there are facts showing that his father was a man of property; that he conveyed the sixty acres

of land in Kansas to the plaintiff, and that the plaintiff never paid a cent for it, but assumed a mortgage on it for $650 and gave his father a second mortgage on it for $800; that he traded the Kansas property for this property, and the other party assumed the mortgage for $650 on the Kansas property. His father destroyed the $800 mortgage on the Kansas property, the plaintiff gave the other party a mortgage on this land for $800, and afterwards borrowed $1,200 on this land from Kitt, out of which the $800 mortgage was paid; that when the Kitt mortgage fell due and the Richards judgment was rendered against him in 1898, he tried to borrow more money on the land, and failing so to do, he sold everything he had on the place, except a grindstone and a crowbar, and moved to Kansas in 1898, returned for a few days in 1899, but made no inquiries about the land or the judgment, came back in February, 1900, to bury his father, and learned that the land had been sold, and in April, 1901, began this suit in ejectment. It also appeared that this father owned 160 acres of other land in Kansas. Thus it appeared that the plaintiff never paid a cent for this land, but that he traded the Kansas land that his father had given him for this land; that the only sums the plaintiff paid were the first year's interest on the Kitt mortgage and the taxes for 1896. The whole of the balance was paid out of the Kitt mortgage. When the mortgage fell due and judgment was rendered, the plaintiff tried to borrow more money on the land, and failing so to do, sold out his personal property and moved to Kansas, and has never come back, and never bothered particularly about the land afterwards until this suit was brought. It also appeared that the grocery bills were contracted and stood in the the name of the father, and that the father worked on the place as well as the son. Thus there was substantial evidence that the father possessed means and the plaintiff did not. They all lived on the land, but the father worked as well as the plaintiff, and the father

bought the family supplies. So there was evidence that although the land belonged to the plaintiff, he was not the head of the family, and the land was, therefore, not his homestead. There was also evidence of a practical kind to support the idea of an abandonment of the homestead, even if it was a homestead. The head of a family, going away temporarily, for the health of a member of his family, does not usually sell all his household goods, and personal property, go away and stay away for a year or two and make no inquiries about his land, even after he knows that his tenant has ceased to pay him rent, or has attorned to a purchaser of the land under an execution sale against him. The utmost that could be said of this case is that the testimony of the plaintiff and of his mother and sister support his theory of the case, while the testimony of the grocery keeper, the defendant and the physical facts and acts show evidence in support of the judgment. Under such state of the record, it is the practice of this court not to interfere with the finding of the trial court. [James v. Ins. Co., 148 Mo. 1; Banking Co. v. Brown, 165 Mo. l. c. 37.]

## II.

It is next insisted that the sale is void because the execution under the Richards judgment was issued to the constable of Chillicothe township, while the defendant's home was in Medicine township, and hence the *nulla bona* return of the constable will not support an execution issued out of the circuit court.

Section 4019, R. S. 1899, provides that no execution shall be issued from the circuit court upon a transcript of a judgment rendered by a justice of the peace, if the defendant is a resident of the county, until the execution has been issued by the justice of the peace to the constable of the township in which the defendant resides, and has been returned *nulla bona*. The judgment was rendered on November 9, 1898. The execution was issued by the justice on July 14, 1899, to the constable

of Chillicothe township, and was retured *nulla bona* on October 14, 1899. The plaintiff left Missouri in the fall of 1898. If the court was right in holding that he was not thereafter a resident of that county, then the issuance of the execution on July 14, 1899, to a constable of the township in which the judgment was rendered instead of to the constable of the township in which the plaintiff had formerly resided, was not a violation of the statute quoted, and did not impair the right of the circuit clerk to issue an execution based upon such transcript and *nulla bona* return. [Huhn v. Lang, 122 Mo. 600; McAnaw v. Matthis, 129 Mo. 142.]

Finding no reversible error in the record, the judgment is affirmed.

All concur.